# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

| | |
|---|---|
| YOLANDA RICHARDS, NORMA L. DIXON, and CYNTHIA D'ABADIE, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br>v.<br><br>PULASKI COUNTY SPECIAL SCHOOL DISTRICT<br><br>      Defendant. | CIVIL ACTION NO.: 4:20-CV-2020 |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Yolanda Richards, Norma L. Dixon, and Cynthia D'Abadie (the "Named Plaintiffs"), individually and on behalf of the collective of individuals they seek to represent (collectively with the Named Plaintiffs, "Plaintiffs"), and Defendant Pulaski County Special School District ("Defendant") (together with Plaintiffs, the "Parties").

## RECITALS

**WHEREAS**, the Named Plaintiffs have filed a Complaint asserting claims against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; and the Arkansas Minimum Wage Act, Ark. Code Ann. 11-4-201, *et seq.*, for the alleged failure to properly pay overtime due to their prorating payment system moving hours Plaintiffs were worked and not paying them the contracted rate for hours they worked in the time it was due (the "Litigation");

**WHEREAS**, the purpose of this Agreement is to settle the claims asserted in the Litigation for the time period January 7, 2017 to November 6, 2020;

**WHEREAS**, Defendant denies all allegations made by Plaintiffs in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

**WHEREAS**, the Parties agreed to engage in discussions regarding the possibility of a voluntary resolution of the claims asserted in the Litigation;

**WHEREAS**, the Parties participated in the exchange and review of payroll data and other relevant information and entered into informal negotiations through their counsel which resulted

in this Agreement; and

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendant in the Litigation, conducted interviews with Plaintiffs and potential witnesses, obtained and reviewed documents relating to Defendant's compensation policies and practices, analyzed payroll data provided by Defendant, and mediated this case with Defendant and an outside mediator, and based on this analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a less favorable recovery, and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the Plaintiffs' best interests.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to settle the Litigation on the following terms and conditions.

**1.    DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

1.2    "Approval Order" means an order entered by the Court, which approves the Settlement and this Agreement.

1.3    "Eligible Employees," means the individuals who held an sarlaried, non-exempt, pro-rated position with Defendant and whose overtime pay rate was not applied to pro-rated hours paid during a pay period where they worked more than 40 hours per week in at least one workweek during the time period January 7, 2017 to November 6, 2020.

1.4    "Participating Employees," means the Named Plaintiffs and the individuals who held an sarlaried, non-exempt, pro-rated position with Defendant, returned a Consent to Join Collective Action form prior to the consent deadline, and whose overtime pay rate was not applied to pro-rated hours paid during a pay period where they worked more than 40 hours per week in at least one workweek during the time period January 7, 2017 to November 6, 2020.

1.5    "Complaint" means the Class and Collective Action Complaint, dated January 7, 2020.

1.6    "Court" means the United States District Court for the Eastern District of Arkansas.

1.7    "Defendant" means Pulaski County Special School District.

1.8    "Defendant's Counsel" means Bequette, Billingsley & Kees, P.A.

1.9 "Employer Payroll Taxes" means all tax payments an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.10 "Gross Settlement Amount" means Fifteen Thousand Six Hundred Dollars ($15,600.00), which is the amount that Defendant has agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees and costs; and any and all amounts to be paid to Participating Employees.

1.11 "Litigation" or the "Lawsuit" or the "Action" mean the lawsuit captioned as *Yolanda Richards, Norma Dixon, and Cynthia D'Abadie, individually and on behalf of all others similarly-situated v. Pulaski County Special School District*, Case No. 4:20-CV-20-LPR (E.D. Ark.)

1.12 "Named Plaintiffs" means Yolanda Richards, Norma Dixon, and Cynthia D'Abadie.

1.13 "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions/payments for Court-approved amounts: (i) Plaintiffs' Counsel's attorneys' fees and costs; and (ii) payments due directly to Yolanda Richards and Norma Dixon.

1.14 "Parties" collectively means the Named Plaintiffs and Defendant.

1.15 "Plaintiffs" means the Named Plaintiffs and the collective of individuals that they seek to represent.

1.16 "Plaintiffs' Counsel" means WH Law, PLLC.

1.17 "Releasees" means Defendant and the other companies that comprise Pulaski County Special School District, and their officers, directors, employees, agents, insurers, successors, predecessors, affiliates, parents, subsidiaries, attorneys, and other related entities.

1.18 "Relevant Period" means the time period between January 7, 2017 and November 6, 2020.

1.19 "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

1.20 "Settlement Amount" or "Settlement Amounts" means each Participating Employee's proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

1.21 "Settlement Check" means the check issued to each Participating Employee for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

## 2. PAYMENT TO PARTICIPATING SETTLEMENT COLLECTIVE MEMBERS

2.1  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2  Plaintiffs' Counsel will be responsible for calculating the proportionate Settlement Amount due to each Participating Employee and for mailing the settlement check to Participating Employees.

2.3  Defendant has provided Plaintiffs' Counsel accurate information, as provided herein and to the extent reasonably available, necessary to calculate the Settlement Amounts. Defendant's records shall be presumed accurate.

2.4  The Parties shall use their best efforts to file a Joint Motion for Order Approving Settlement of Collective Action and Authorizing Notice of Settlement ("Approval Motion") within 14 days after the execution of this Agreement. With the Approval Motion, the Parties also will file the Agreement together with a proposed Approval Order attached hereto as **Exhibit A**. Among other things, the Approval Motion will ask the Court to: (i) approve the Settlement as fair, adequate, and reasonable; (ii) approve the plan for its distribution to Participating Employees; (iii) incorporate the terms of the Settlement; and (iv) enter Judgment dismissing the case with prejudice.

2.5  In the event that the Court fails to approve this Agreement, the Parties (a) will attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated settlement and agreement (b) and/or any or all Parties may seek reconsideration or appellate review of the decision denying approval of the Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted. In that event, nothing in the Settlement or Agreement may be used by or against any Party as stated in Rule 408 of the Federal Rules of Evidence.

## 3. SETTLEMENT TERMS

### 3.1 Settlement Payments.

i.  Defendant agrees to pay the Gross Settlement Amount of Fifteen Thousand Six Hundred Dollars ($15,600.00), which shall fully resolve and satisfy any and all amounts to be paid to Participating Employees. The settlement amount will include a lump sum payment of $450.00 to Plaintiff Yolanda Richards, $450.00 to Plaintiff Norma Dixon, and $3,200.00 to be divided among other Participating Employees. The remaining $11,500.00 will be paid to Plaintiff's counsel for attorney's fees and costs. Defendant shall pay Employer Payroll Taxes for each Participating Employee and shall deduct required withholdings from the amounts to be paid to Participating Employees.

    ii.    Within 7 days after the Court's approval of this Agreement, Defendant shall deliver to Plaintiffs' Counsel a check for attorneys' fees and costs in the amount of $11,500.00.

    iii.    Within 7 days after the Court's approval of this Agreement, Defendant shall deliver to Plaintiffs' Counsel a check for Named Plaintiff Yolanda Richards in the amount of $450.00, a check for Named Plaintiff Norma Dixon in the amount of $450.00, distribute $3,200.00 to Eligible Employees under the terms in Section 3.3, and a check to WH Law, PLLC in the amount of $11,500.00.

### 3.2 Settlement Amounts Payable as Attorneys' Fees and Costs.

    i.    In their Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of costs and fees in the amount of $11,500.00, which includes attorney's fees, filing fee, service fee, and costs for administering this settlement. This amount shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiffs agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this case other than for any fees and costs incurred related to any efforts to enforce the terms of this Agreement.

    ii.    The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder. Any money requested for attorneys' fees or costs that are not approved by the Court shall become part of the Net Settlement Fund.

### 3.3 Distribution of Payments to Participating Employees.

    i.    Payments to Participating Employees will be made from the Net Settlement Fund. Amounts owed to Participating Employee will be determined by Plaintiffs' Counsel pursuant to the following principles: For each of the three years in the Relevant Period, each Participating Employee's potential recovery of unpaid overtime will be based on the pro rata share of their potential recovery calculated by first creating a settlement Bonus Overtime Rate ("BOR"). Based upon Defendant's year-to-date payroll records for each year in the Relevant Period, the BOR will be determined by dividing total hours into total bonus money paid and then multiplying by 0.5. The BOR will then be multiplied by total overtime hours to determine each Participating Employee's potential recovery.

The Net Settlement Fund will be divided into a monthly equivalent by dividing the Net Settlement Fund by 46, which is the total number of months covered in the Relevant Period. The monthly equivalent of the Net Settlement Fund will be assigned to each set of year-to-date payroll records, according to the number of months represented in each set.

Each Participating Employee's pro rata share will then be calculated by dividing each Participating Employee's potential recovery by the total of all Participating Employees' potential recovery in each set of year-to-date payroll records to obtain a share decimal or percentage. Each Participating Employee's share decimal or percentage will be multiplied by the total of the monthly equivalent of the Net Settlement Fund assigned to each set of year-to-date payroll records to determine each Participating Employee's pro rata share.

ii. Plaintiffs' Counsel's calculations regarding Participating Employees Settlement Amounts from the Net Settlement Fund will be final and binding.

iii. Defendant's Payroll Tax Responsibility and Tax Characterization of Payments.

(a) For tax purposes, the payment to a Participating Employee pursuant to this Agreement shall be treated as back wages.

(b) Defendant's share of payroll taxes shall be paid separately and in addition to the Gross Settlement Amount.

(c) Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2. Defendant will be responsible for issuing the Settlement Checks and issuing IRS Forms W-2 and Forms 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS and an IRS Form 1099 will be issued to Plaintiffs' Counsel.

(d) The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Participating Employees receiving a Settlement Check. The Parties make no representations, and it is understood and agreed that the Parties have made no representations, as to the taxability of any portions of the settlement payments to any Participating Employees, the payment of any costs or award of attorneys' fees. Neither Plaintiffs' Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

**3.4** **Reversion.** Any portion of the Gross Settlement Amount not distributed under the terms of this Agreement shall revert to Defendant.

**3.5** **Nonmonetary terms.** Retalition against the Plaintiffs in any way for particparting in or pursuing this litigation is illegal under the FLSA and is not allowed. Further, in all new hire packets and the handbook of policies promulgated and adopted by the PPC, the policy of the process for new and current employees to opt of of being paid on a prorated basis if they so desire, without penalty, by executing and returning a written form explaining the prorated pay process will be written and adoped. Said policy and the form for it will be in writing and employees will be allowed to opt out of being paid on a prorated basis during a payment election period, prior to each contract year.

**4. RELEASE OF CLAIMS**

**4.1** Release by Participating Employees: Conditioned upon the Court's entry of the Approval Order, and in exchange for monetary consideration received pursuant to this Agreement, all Participating Employees shall release Releasees from all claims arising from Defendant's alleged failure to properly pay overtime by failing to include pro-rated hours in the regular rate for purposes of determining the amount of overtime due under state and federal Wage and Hour laws, that accrued during their employment as Eligible Employees, relating back to the full extent of the state and federal statute of limitations and continuing through November 6, 2020, including, without limitation, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, arising out of the allegations in this Litigation. The claims being released are referred to in this Agreement as "Released Claims." Participating Employees do not release any of their claims under state and federal Wage and Hour laws not arising from Defendant's alleged failure to properly pay overtime by failing to include pro-rated hours in the regular rate for purposes of determining the amount of overtime due.

**4.2** Notwithstanding Named Plaintiffs' definitional status as Eligible Employees, Named Plaintiffs and Releasees release each other from any and all claims they may have against each other arising out of Named Plaintiffs' employment with Defendant.

**4.3** Any Eligible Employee who did not timely execute and return a Notice of Consent to Join Collective Action by the deadline will not be considered a Participating Employee and will not receive any payment pursuant to this Agreement and will not release any claims.

**5. PARTIES' AUTHORITY**

**5.1** The signatories represent that they are fully authorized to enter into and to bind the Parties to the terms and conditions of this Agreement.

**6. MUTUAL COOPERATION**

**6.1** The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this

Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, and in accordance with its terms, the parties shall take all necessary steps to secure the Court's approval of this Agreement.

**7.  NOTICES**

7.1  Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs and/or Settlement Collective:

Chris Burks
WH Law, PLLC
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
(501) 891-6000
chris@wh.law

To Defendant:

Cody Kees
Jay Bequette
Bequette, Billingsley, & Kees, PA
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201
(501) 374-1107
jbequette@bbpalaw.com
ckees@bbpalaw.com

**8.  NO ADMISSION OF LIABILITY**

8.1  Defendant denies all of the allegations made by Named Plaintiffs in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nothing herein will be deemed or used as an admission that a collective or class action should be certified for any purposes other than for settlement. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

## 9. INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

**9.1** No Public Comment. The Parties and their counsel agree that they do not intend to issue any press releases announcing the Settlement. Plaintiffs' Counsel will not state on their firm's website either the amount of the Settlement Payment or the terms and conditions of the Settlement, but may state on their website that the Action was settled.

**9.2** Further Acts. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**9.3** No Assignment. Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

**9.4** Entire Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein.

**9.5** Binding Effect. This Agreement shall be binding upon the Parties and, with respect to Defendant, its affiliates, parents, subsidiaries, predecessors, successors, employees and agents; and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**9.6** Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**9.7** Captions. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**9.8** Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**9.9** Governing Law. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Arkansas, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**9.10** Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment,

with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement

**9.11** Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**9.12** Facsimile, Electronic, and E-mail Signatures. Any party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or e-mail to counsel for the other party. Any signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

**9.13** Signatories. This Agreement is valid and binding if signed by Defendant's authorized representative and the Named Plaintiffs.

*[Signatures on the following page]*

**WE AGREE TO THESE TERMS.**

DATED: 05/17/2021  **PULASKI COUNTY SPECIAL SCHOOL DISTRICT**

By: *Charles McNulty*

_SUPERINTENDENT
Title

DATED: 7/5/2021 | 11:46:41 AM CDT  **NORMA DIXON**

Page **10** of **11**

DATED: _____   **YOLANDA RICHARDS**

_____

DATED: 5/22/2021 | 6:18:46 AM CDT   **CYNTHIA D'ABADIE**

*Cynthia D'Abadie*

DATED: 7/6/21   **WH Law**

/s/ Chris Burks

DATED: _____   **Bequette, Billingsley, and Kees, PA**

*Cody Kees*

DATED: 5/27/2021 | 12:24:26 PM PDT    **YOLANDA RICHARDS**

*/s/ Y. Richards/*

DATED: _____    **CYNTHIA D'ABADIE**

_____

DATED: _____    **WH Law**

_____

DATED: _____    **Bequette, Billingsley, and Kees, PA**

*/s/ Cody Kees/*